UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GLOBAL CROSSING BANDWITH, INC.,
a California Corporation,

                               Plaintiff,

                                                <u>DECISION AND ORDER</u>

                                                05-CV-6423L

                   v.

OLS, INC.,
a Georgia Corporation,
TELEUNO, INC.,
a Delaware Corporation, jointly and
severally,

                                Defendants.
_____

       Plaintiff, Global Crossing Bandwidth, Inc. ("Global"), has brought this action pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332, alleging claims against defendants OLS, Inc. and TeleUno, Inc. arising out of the alleged breach of a telecommunications services contract. On July 8, 2008, the Court issued a Decision and Order ("summary judgment decision"), familiarity with which is assumed, that: (1) denied defendants' motions for summary judgment and to strike; (2) granted Global's cross-motion for summary judgment on the issue of liability with respect to two aspects of Global's claims, but denied Global's motion on the issue of damages as to those claims; and (3) granted in part and denied in part Global's motion for summary judgment on defendants' counterclaims. *See* Dkt. #87.

Since the summary judgment decision was filed, the parties have filed three new motions. Global has filed a motion for entry of judgment in its favor (Dkt. #91), in the amount of roughly $1.8 million, plus interest.  Defendants have filed a motion to stay further proceedings in this case (Dkt. #93) pending determination of certain issues by the Federal Communications Commission ("FCC"), and a motion for "clarification" of the summary judgment decision (Dkt. #96).  This Decision and Order constitutes my ruling on those three motions, all of which are denied.

## DISCUSSION

### I. Defendants' Motion to Stay

Defendants move for an order staying this action until the FCC has decided three issues:  (1) whether Global has violated the prohibition of unreasonable practices contained in § 201(b) of the Federal Communications Act ("FCA" or "Act"), 47 U.S.C. § 201(b)[1]; (2) whether the minimum monthly usage charges ("MMUCs") imposed by plaintiff constitute "unreasonable and unjust charges" in violation of § 201(b); and (3) whether Global's billing and collection practices have violated §§ 201(b) and 203(c) of the Act.[2]  In support of that motion, defendants state that they filed

---

[1]Section 201(b) provides, in part, that "[a]ll charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful ... ."

[2]Section 203(c) provides, in part, that "no carrier shall ... charge, demand, collect, or receive a greater or less or different compensation for [interstate and foreign wire or radio] communication, or for any service in connection therewith, ... than the charges specified in the schedule then in effect, or ... employ or enforce any classifications, regulations, or practices

(continued...)

a petition with the FCC on September 19, 2008, seeking a declaratory ruling that Global's practices and charges are unreasonable and that they violate §§ 201(b) and 203(c) of the Act.  Dkt. #94-2.

Defendants base their motion on the "primary jurisdiction" doctrine, which "comes into play whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *Mathirampuzha v. Potter*, 548 F.3d 70, 83 (2d Cir. 2008) (quoting *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956)).  "Under the doctrine, a court defers to the agency for advisory findings and either stays the pending action or dismisses it without prejudice." *Johnson v. Nyack Corp.*, 86 F.3d 8, 11 (2d Cir. 1996) (citing *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993)).

"Primary jurisdiction is a judge-made doctrine [that] serves two principal interests: 'consistency and uniformity in the regulation of an area which Congress has entrusted to a federal agency; and the resolution of technical questions or facts through the agency's specialized expertise, prior to judicial consideration of the legal claims.'" *TCG New York, Inc. v. City of White Plains*, 305 F.3d 67, 74 (2d Cir. 2002) (quoting *Golden Hill Paugussett Tribe v. Weicker*, 39 F.3d 51, 59 (2d Cir. 1994)), *cert. denied*, 538 U.S. 923 (2003).  The Second Circuit "ha[s] also cited judicial economy as an interest that the primary jurisdiction doctrine can serve." *TCG New York*, 305 F.3d at 74 (citing *Johnson*, 964 F.2d at 123); *but see Tassy v. Brunswick Hosp. Center, Inc.*, 296 F.3d 65, 68 n. 2 (2d Cir. 2002) (noting that "the Supreme Court has never identified judicial economy as a relevant factor").

---

[2](...continued)
affecting such charges, except as specified in such schedule."

"Since the inception of the doctrine, courts have resisted creating any fixed rules or formulas for its application." *Tassy*, 296 F.3d at 68 (citing *Western Pac. R.R.*, 352 U.S. at 64).  The Second Circuit in particular has "emphasize[d] that primary jurisdiction is a discretionary doctrine whose applicability in any given case depends on 'whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation,'" and that "[t]he doctrine cannot be applied mechanically." *Id.* at 72 (quoting *Western Pac. R.R.*, 352 U.S. at 64).

Although there is thus "[n]o fixed formula ... for determining whether an agency has primary jurisdiction," courts typically consider four factors when making that determination:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 295 (2d Cir. 2006) (internal quotation marks omitted); *accord F.T.C. v. Verity Int'l, Ltd.*, 443 F.3d 48, 60 (2d Cir. 2006), *cert. denied*, 549 U.S. 1278 (2007).  The Second Circuit "ha[s] noted as well that '[t]he court must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings.'" *Ellis v. Tribune Television Co.*, 443 F.3d 71, 83 (2d Cir. 2006) (quoting *National Comms. Ass'n, Inc. v. AT & T Co.*, 46 F.3d 220, 223 (2d Cir. 1995)).

Although the doctrine should be applied flexibly, then, the case law establishes that it should not be lightly invoked or applied, and that cases in which its application is warranted tend to be the exception, not the norm.  *See*, *e.g.*, *AT&T Corp. v. Nudell*, No. 07-1603, 2008 WL 2986776, at *7

(D.Md. July 30, 2008) ("The doctrine 'should be invoked sparingly, as it often results in added expense and delay'") (quoting *Red Lake Band of Chippewa Indians v. Barlow*, 846 F.2d 474, 477 (8th Cir. 1988)) (additional internal quotation marks omitted); *Lipton v. MCI Worldcom, Inc.*, 135 F.Supp.2d 182, 191 (D.D.C. 2001) ("The doctrine of primary jurisdiction is a flexible tool used to allocate 'business between court and agency', and should seldom be invoked unless a factual question requires both expert consideration and uniformity of resolution") (quoting *United States v. McDonnell Douglas Corp.*, 751 F.2d 220, 224 (8th Cir. 1984)).

With respect to the case at bar, it is true that there is authority suggesting that issues involving the application and interpretation of the FCA *may* be appropriate subjects for initial consideration by the FCC, and that a court faced with such issues should stay its hand until the agency has had an opportunity to pass upon them.  *See*, *e.g.*, *Ellis*, 443 F.3d at 81-93 (discussing why district court should have invoked primary jurisdiction doctrine and allowed FCC to address licensing issue in the first instance).  Simply because a matter falls within the FCC's jurisdiction does not necessarily mean that the primary jurisdiction doctrine is applicable, however.  As stated, the doctrine should not be applied mechanically or according to some rigid formula.  *See id.* at 82 (primary-jurisdiction "[a]nalysis is on a case-by-case basis") (quoting *General Elec. Co. v. MV Nedlloyd*, 817 F.2d 1022, 1026 (2d Cir. 1987), *cert. denied*, 484 U.S. 1011 (1988)).

In that regard, one of the factors that can affect the equation in a given case is whether the party invoking the primary jurisdiction doctrine has made a *prior* application to the agency.  *See id.* at 89 ("if prior application to the agency is absent, this factor may weigh against referral of the matter to the agency on the basis of primary jurisdiction").  *See*, *e.g.*, *National Comms. Ass'n*, 46 F.3d at

222 (noting the district court's determination that, because "no prior application had been made to the FCC," this "factor[ ] did not favor referral to the FCC"); *United States ex rel. Taylor v. Gabelli*, 345 F.Supp.2d 340, 357 (S.D.N.Y. 2004) (holding that this factor "disfavors referral" because "no prior application to the FCC has been made").

In addition, there is authority that "primary jurisdiction arguments can be waived." *CSX Transp. Co. v. Novolog Bucks County* ("*Novolog*"), 502 F.3d 247, 253 (3d Cir. 2007); *see also Gross Common Carrier v. Baxter Healthcare Corp.*, 51 F.3d 703, 706 (7th Cir. 1995) (because primary jurisdiction differs from subject matter jurisdiction, in the sense that "[i]t does not ... concern a court's power to hear a case in the first instance[,] ... application of the doctrine of primary jurisdiction can be waived or forfeited by the parties"); *CSX Transp., Inc. v. Transportation-Comm. Int'l Union*, 413 F.Supp.2d 553, 564 (D.Md.  2006) ("the doctrine of primary jurisdiction, under which a court defers to an administrative agency for a particular finding, is waivable by simple failure to assert it"), *aff'd*, 480 F.3d 678 (4th Cir. 2007).  *See, e.g.*, *Global NAPs, Inc. v. Verizon New England, Inc.*, 444 F.3d 59, 75 n. 16 (1st Cir. 2006) (noting that appellant "also asks us to refer [a particular issue] to the FCC under the doctrine of primary jurisdiction.  This was an argument certainly not discussed in the initial briefing or at oral argument, and we deem it waived"); *Morsey v. Chevron USA, Inc.*, 779 F.Supp. 150, 153 (D.Kan. 1991) (stating that "[c]ourts may weigh the timeliness of the assertion of the defense in making their discretionary decision to invoke the primary jurisdiction doctrine," and denying defendant's motion for a stay where defendant "waited nearly two years from the time it removed this action to assert primary jurisdiction").

In *Novolog*, for example, the Court of Appeals for the Third Circuit held that the district court did not abuse its discretion in denying the appellant's motion to refer to the Surface Transportation Board ("STB") an issue concerning railroad "demurrage charges," where the appellant "chose to wait until judgment [as a matter of law] had been entered, and then requested a second bite at the apple." 502 F.3d at 253.  Noting that the doctrine of primary jurisdiction "is intended to 'serve as a means of coordinating administrative and judicial machinery ...,'" *id.* (quoting *Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co.*, 215 F.3d 195, 205 (1st Cir. 2000)), the court reasoned that "[n]o coordination would be achieved by requiring a District Court, *after* it has rendered a judgment, to vacate that judgment upon motion and refer a question it has already decided to an agency." *Id.*; *see also Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1051 and n. 8 (9th Cir. 2000) (finding it unnecessary to decide whether appellant had waived its primary-jurisdiction argument, since argument failed on the merits, but stating that it was "important to note that [appellant] did not seek application of the primary jurisdiction doctrine until after the district court had already" granted appellee summary judgment, and adding that "[s]taying the proceedings at that late date, much less now, would hardly have enhanced the district court's efficiency, nor would it have taken advantage of the [relevant agency]'s expertise, given that the district court had already decided" the relevant issue).

In my view, the same reasoning applies here.  Defendants certainly could have raised the primary jurisdiction matter much earlier in this litigation, but they chose instead to wait until after the Court had ruled adversely to them in certain respects in the summary judgment decision. Defendants' contention that "[i]t could not have been anticipated" that the Court would have ruled

the way that it did (according to defendants, by "misconstruing the applicable facts and precedent and by failing to address" certain relevant provisions, Defendants' Mem. (Dkt. #94) at 4 n. 3), rings hollow, and is little more than an admission that defendants were simply not expecting an adverse ruling from the Court on the summary judgment motions.

I am also not persuaded that the primary jurisdiction doctrine warrants a stay here in any event. One of the principal issues that defendants contend is appropriate for referral to the FCC–indeed, one of the principal issues in this lawsuit–is whether the MMUCs imposed by Global were valid and enforceable. As my summary judgment decision made clear, to a great extent that question was determined under New York, not federal, law. *See* 566 F.Supp.2d at 201. In addition, although defendants also contended that the MMUCs violated the FCA, the Court found that assertion to be without merit, stating that the FCC "has expressly found such provisions to be valid under the Act." *Id.* at 205 (citing *In re Ryder Communications, Inc. v. AT&T Corp.*, 18 F.C.C.R. 13603 (2003)).

Defendants now contend, in effect, that the Court misread and misapplied *Ryder* in the summary judgment decision. Simply arguing that the Court "got it wrong," however, does not equate to a showing that the relevant issues are outside the "conventional experience" of the Court, that they "involve technical or policy considerations within the agency's particular field of expertise," or that they lie "particularly within the agency's discretion." Defendants' argument amounts to little more than a request for a "second bite at the apple" in a different forum, which is not a proper basis for application of the primary jurisdiction doctrine. *Novolog*, 502 F.3d at 253.

The cases relied upon by defendants also fail to support their motion.  Although those cases stand for the general proposition that questions of "reasonableness" under § 201(b) should be addressed to the FCC in the first instance, *see, e.g., Niehaus v. AT&T Corp.*, 218 F.Supp.2d 531, 537 (S.D.N.Y. 2002) (citing cases), defendants in the case at bar paint with too broad a brush in relying on such cases here.  Merely because a case involves allegations that a carrier's practices violate § 201(b) does not necessarily mean that a stay or dismissal is appropriate under the primary jurisdiction doctrine.  *See, e.g., Tassy*, 296 F.3d at 73 ("In the primary jurisdiction context, whether an agency is statutorily authorized to resolve a particular issue is not itself determinative of whether to apply the doctrine"); *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002) (stating that the primary jurisdiction "doctrine does not require that all claims within an agency's purview be decided by the agency," and that "[p]rimary jurisdiction is not implicated simply because a case presents a question ... over which the FCC could have jurisdiction"); *F.T.C. v. Verity Int'l, Ltd.*, 194 F.Supp.2d 270, 278-79 (S.D.N.Y. 2002) ("That the FCC appropriately might reach the issues here does not necessarily mean that this Court should defer to it").  Presumably if the application of the doctrine were that automatic, defendants would not have waited until after this Court ruled on the summary judgment motions before raising this issue.  Such a *per se* rule would also run counter to the Second Circuit's admonition that "primary jurisdiction is a discretionary doctrine [that] cannot be applied mechanically."  *Tassy*, 296 F.3d at 72.

This case also does not present any "technical questions of fact uniquely within the expertise and experience" of the FCC.  *Business Edge Group, Inc. v. Champion Mortg. Co., Inc.*, 519 F.3d 150, 154 (3d Cir. 2008) (quoting *Richman Bros. Records, Inc. v. U.S. Sprint Comms Co.*, 953 F.2d

1431, 1435 n. 3 (3d Cir. 1991)).    Although, like most cases involving disputes over telecommunications agreements, this case does require some familiarity with, and understanding of, matters that could be described as "technical," the issues here are not so arcane, complex or esoteric that they would best be left to the agency to decide in the first instance.  *See Business Edge*, 519 F.3d at 154 ("While this case presents 'technical questions of fact' that are 'within the expertise' of the FCC, we believe it more appropriate to remand to the District Court for further proceedings than to transfer it to the agency," since district court was capable of resolving the relevant issues); *Verity Int'l*, 443 F.3d at 60 (issues to be decided were "within the court's competence," in part because "there [we]re many precedents, including those of the FCC," bearing upon those issues); *National Comms. Ass'n*, 46 F.3d at 223 (reversing district court's order dismissing action based on FCC's primary jurisdiction, in part because the relevant issue "d[id] not require the FCC's policy expertise, or its specialized knowledge, and it [wa]s within the district court's experience").

Finally, I do not see a "substantial danger" of inconsistent rulings by this Court and the FCC. *Schiller*, 449 F.3d at 295.  For one thing, there appears to be little risk of this Court and the FCC each issuing a decision at about the same time, unaware of the other tribunal's contemporaneous ruling. As stated, defendants filed their petition with the FCC around the time that they filed their motion for a stay in this Court in September 2008.  In response to an inquiry from the Court, defense counsel advised the Court in letters dated January 23 and January 27, 2009 that prior to ruling on the petition, the FCC is required to issue a public notice giving interested members of the public thirty days to comment on the petition, and that the FCC had not yet issued such notice.  Given the FCC's inaction, then, there appears to be little likelihood that a decision by the FCC is imminent.

- 10 -

Second, as stated in my summary judgment decision, the FCC has previously upheld contractual provisions similar to those at issue in the case at bar.  566 F.Supp.2d at 205 (citing *Ryder*, 18 F.C.C.R. 13603).  Although defendants may believe that the Court's reading of *Ryder* was in error, I do not believe there is a "substantial danger" of the FCC issuing a ruling here in conflict with my decision.

Finally, it bears repeating that defendants chose to file their FCC petition *after* this Court had ruled on the summary judgment motions, and at the same time that they filed their motion for a stay in this Court.  Defendants should not be permitted to manufacture a risk of inconsistent rulings by first seeking summary judgment in this Court and, only after they are unsuccessful in doing so, filing a petition with the FCC, and then using that petition to belatedly seek a stay of further proceedings in this Court.  *Cf. Ellis*, 443 F.3d at 73, 76 (district court erred in not dismissing or staying action under the primary jurisdiction doctrine, where defendant's application for waiver of FCC's "cross-ownership" rule was pending before FCC *at the time that plaintiff filed complaint* in district court, seeking to mandate defendant's compliance with that rule).

As noted, the Second Circuit in *Tassy* stated that "the Supreme Court has never identified judicial economy as a relevant factor" in the primary-jurisdiction analysis.  296 F.3d at 68 n. 2.  The court added, however, that

> [n]o doubt the reason is that considerations of judicial economy cannot assist a primary jurisdiction analysis, as it will always be more economical, from a judge's point of view, to dismiss a case or quickly refer it to an administrative agency, instead of adjudicating it himself.  *We are enjoined to resist this temptation* because of "the *virtually unflagging obligation* of the federal courts to exercise the jurisdiction given them."

*Id.* (quoting *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976) (emphasis added and citations omitted).

Mindful of that obligation, as well as the "relatively narrow scope of the doctrine of primary jurisdiction," *TCG New York*, 305 F.3d at 75 (quoting *Goya Foods, Inc. v. Tropicana Prods.*, 846 F.2d 848, 851 (2d Cir. 1988), and the fact that "the doctrine is not designed to 'secure expert advice' from agencies 'every time a court is presented with an issue conceivably within the agency's ambit,'" *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (quoting *Brown v. MCI WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir. 2002)), I conclude that application of the doctrine to the case before me, in its present posture, is not warranted.  Defendants' motion for a stay is therefore denied.


**II. Plaintiff's Motion for Entry of Judgment and Defendants' Motion for Clarification**

Global has moved for the entry of judgment in its favor in the principal sum of about $1.8 million, plus pre- and post-judgment interest.  Global bases its motion in part on the Court's prior decision granting summary judgment for plaintiff on the issue of liability as to some of its claims concerning the MMUCs and the primary interexchange carrier change ("PICC") charges.

Defendants contend that Global's motion should be denied outright, and that even if the Court were to grant the motion, the most that Global could be entitled to is a little over $1 million. In addition, defendants have filed what they style as a "motion for clarification" of the Court's summary judgment decision.  Defendants contend that in attempting to arrive at a mutually agreeable stipulation of damages in light of the summary judgment decision, the parties realized that they held

sharply divergent understandings of the effect of that decision on two aspects of this case, specifically, defendants' counterclaims and Global's damages.   Defendants therefore seek another order from this Court "clarifying" the extent to which defendants' counterclaims survived the confirmation of Global's bankruptcy on December 9, 2003, as well as the maximum amount of damages that defendants could be obligated to pay to Global in the wake of the summary judgment decision.

These two motions, then, in many ways relate to the same underlying issues.   Global contends that it is entitled to judgment, in part because, given the Court's rulings in the summary judgment decision, defendants have virtually no viable counterclaims remaining.   The extent to which the counterclaims remain viable is also a principal focus of defendants' motion for clarification.   Both motions also implicate the maximum amount of damages to which Global is, or could be, entitled.

Before discussing these motions, it is necessary to provide some additional background.   As stated earlier, the Court granted Global's motion for summary judgment as to liability with respect to two components of Global's claims, relating to the MMUCs and PICC charges.   The Court also dismissed two of defendants' counterclaims in their entirety, and dismissed all of defendants' counterclaims to the extent that they arose prior to December 9, 2003, which was the date on which Global's bankruptcy reorganization plan became effective.   *See* 566 F.Supp.2d at 210, 216.

In my prior decision, however, I declined to grant summary judgment for Global on any of its claims as to damages.   With respect to Global's claim relating to the PICC charges, the Court stated that "[t]he amount of such charges owing to Global ... cannot be determined on the record

before me," that "[a] trial or inquest on damages is required," and that "calculation of [Global's] damages must await trial, unless the parties can agree on the correct amount." *Id.* at 209.

After ruling on the various motions with respect to liability, the Court also stated, with regard to the issue of "what relief should be granted at this point," that although "[t]he dispute over the MMUC issue ... appears to be strictly over the enforceability of the MMUC provisions, not the amount due[,] ... I do not believe that it would be advisable to enter judgment at this time in Global's favor on these [MMUC] claims, since some of defendants' counterclaims remain pending and may eventually offset the amounts to which Global is entitled." *Id.* at 215. The Court therefore granted summary judgment for Global on the issue of liability with respect to the MMUC claims, but stated that it would "not enter judgment as to damages until the parties' remaining claims have been resolved." *Id.* at 216.

Despite that clear indication that the Court "d[id] not believe that it would be advisable to enter judgment" for Global until the remaining claims in the case had been resolved, Global contends that entry of judgment in its favor is now appropriate. According to Global, this is a straightforward matter requiring little more than simple arithmetic.

First, Global states, the overall amount of money at issue in this lawsuit is $1,961,770.10. In support of that assertion, Global cites a statement in defendants' brief in support of their prior summary judgment motion stating that this was the amount of Global's claim. *See* Dkt. #24-1 at 5 n. 5. Second, Global says, this Court has already held that Global is entitled to recover the MMUCs, which represent the largest component of defendants' potentially offsetting claims. *See id.*

Third, virtually all of defendants' other claims are, in Global's view, precluded. Global bases that assertion on a letter to the Court from defense counsel dated November 28, 2006. Global reads that letter as stating that the only counterclaims that survived Global's bankruptcy are claims relating to PICC charges and late payment charges ("LPCs"), and that the total amount of those claims is $553,800.95. *See* Dkt. 91-2 at 4; Dkt. #91-4 at 3 n. 1. Global contends that all other claims, by defendants' own admission, are barred by Global's bankruptcy.

Next, Global's argument goes, the Court has already held as a matter of law that Global is entitled to judgment in its favor on the PICC claims. *See* 566 F.Supp.2d at 207. Thus, there can be no offset for such claims, which account for $408,740.82 of the total of the surviving claims. That, Global says, leaves only about $145,000 in LPCs.

As to those LPC claims, Global states that in order to bring this action to a conclusion, it is willing to concede, for purposes of its motion for entry of judgment, that defendants have stated a valid offset for such claims. Accordingly, Global says, the Court should enter judgment in its favor in the amount of $1,961,770.10 minus $145,060.13, for a total of $1,816,709.97.

As indicated, defendants take a much different view of these matters. For one thing, defendants deny that they ever set $553,800.95 as any sort of cap on their damages. They contend that Global has misinterpreted both defense counsel's November 28, 2006 letter and the Court's summary judgment order in that regard. They also assert that, according to their calculations, the most that defendants could possibly owe Global is about $1.2 million, which could be entirely offset if defendants prevail on their counterclaims at trial.

After reviewing both sides' motions and the record before me, I see no basis for granting either Global's motion for entry of judgment or defendants' motion for clarification. The summary judgment order set forth my rulings concerning the various matters at issue in the summary judgment motions. The Court resolved some of those issues, to the extent that I could do so based on the record and the undisputed evidence, and I also indicated that there were issues of fact with respect to certain other aspects of the case. That has not changed. That the parties continue to disagree about some issues is hardly out of the ordinary, either for this case or for contract disputes in general, and does not mean that the summary judgment decision requires some "clarification."

In that same vein, I see no basis upon which the Court can now make any determination as to the precise amount of damages on any of the parties' claims or counterclaims. With respect to the references in defense counsel's November 28 letter to defendants' claims totaling $553,800.95, which seems to be a particular bone of contention here, the letter stated that this figure represented the total amount of remaining "PICCs, LPC and TeleUno claims." Elsewhere in the letter, however, counsel referenced other types of claims asserted by OLS that, in counsel's view, survived Global's bankruptcy, such as claims alleging various misrepresentations, threats and other improper conduct by Global. Global now contends that defendants have somehow waived all such claims, or that such claims should otherwise be dismissed on the merits.

In that regard, the Court can do little better than repeat what I stated in my summary judgment decision (which is precisely why it need not be "clarified" now): "defendants' counterclaims are barred to the extent that they arose prior to the effective date of the Plan, December 9, 2003, but ... issues of fact remain concerning the extent to which the counterclaims are

- 16 -

based on events that occurred after that date." 566 F.Supp.2d at 211.  In addition, while the Court has ruled that some aspects of defendants' counterclaims (such as those based on the PICC charges) are meritless, *id.* at 212, the Court has also stated that certain other aspects of the counterclaims, concerning alleged improper billing and collection practices by Global, involve disputed issues of fact, both as to the merits and as to whether those counterclaims arise out of post-confirmation date events. *Id.* at 211-12.

The Court has been presented with no basis for arriving at a different conclusion now. Although Global attempts at some length to demonstrate its entitlement to a money judgment in a specific dollar amount, I see no reason to depart from my prior decision finding that issues of fact make it inadvisable, if not impossible, to award a specific amount of damages now.  Defendants continue to press a number of counterclaims alleging various wrongful acts by Global.  The merits of those counterclaims, and the extent to which they may offset Global's damages, are to be decided at trial.

In the summary judgment decision, the Court also stated that "calculation of [Global's] damages [as to the PICCs] must await trial, unless the parties can agree on the correct amount" of such damages." *Id.* at 209.  The fact that the parties have been unable to agree on an amount does not mean that further elucidation of the Court's prior decision is warranted, and the Court's statement was not intended as an invitation to the parties to take another stab at summary judgment where they had failed once before.  As stated in the summary judgment decision, in the absence of a stipulation between the parties, the "calculation of [Global's] damages must await trial ... ."  That

statement could not be clearer.  If further narrowing or refinement of the issues is warranted, that can be dealt with by means of appropriate *in limine* motions or jury instructions.

### CONCLUSION

Plaintiff's motion for entry of judgment (Dkt. #91), defendants' motion for a stay (Dkt. #93), and defendants' motion for clarification (Dkt. #96) are denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       March 19, 2009.

- 18 -